Filed 6/24/15  Ambrosio v. Italgres Italian Ceramic Tile CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FAUSTINO AMBROSIO,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ITALGRES ITALIAN CERAMIC TILE, INC., et al.,<br><br>    Defendants and Respondents. | G049557<br><br>(Super. Ct. No. 30-2012-00587452)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.

Andrews Law Group, Brian C. Andrews and James E. Pilley for Plaintiff and Appellant.

Law Offices of Stephen Abraham and Stephen E. Abraham for Defendants and Respondents.

\*          \*          \*

## INTRODUCTION

Plaintiff Faustino Ambrosio sued defendants Italgres Italian Ceramic Tile, Inc., and Seaward Re, L.P., the operator and the owner, respectively, of Italgres Italian Ceramic Tile (the tile store), for violations of section 51, subdivisions (b) and (f) of the Civil Code, also known as the Unruh Civil Rights Act (Civ. Code, § 51 et seq.). (All further statutory references are to the Civil Code unless otherwise specified.) Ambrosio alleged he wished to purchase tile at the tile store, which was a place of public accommodation. Ambrosio further alleged that on four separate occasions, he was denied full and equal access to the tile store due to violations of construction-related accessibility standards, including standards involving van-accessible parking and wheelchair accessibility. He sought damages under section 52, injunctive relief, and attorney fees.

Following a bench trial, the trial court entered judgment in favor of defendants. No party requested a statement of decision and the court did not issue one. Ambrosio argues the trial court erred by finding in favor of defendants and denying his motion for reconsideration.

We affirm. For the reasons we will explain, substantial evidence supported the findings that Ambrosio failed to show he was denied full and equal access to the tile store. He did not prove to the trial court that he either personally encountered a violation on a particular occasion, or was deterred from accessing a place of public accommodation on a particular occasion, within the meaning of section 55.56. As Ambrosio's motion for reconsideration reiterated arguments that were either presented at trial and rejected, or could have been presented at trial and were not, the trial court did not err by denying the motion.

## FACTS

In 1995, Ambrosio suffered a spinal cord injury in a car accident. He is unable to walk or stand and thus uses a wheelchair; he also has limited use of his hands.

2

He was not employed at the time of trial; instead, he performed "side jobs" and sometimes worked as a landscaper.

Ambrosio testified that in January 2012, he went to the tile store to purchase some tile he needed for one of his jobs. He parked his van in the parking area for disabled persons, got out of the van, and tried to find a way to get into the tile store. Ambrosio testified the tile store had stairs at the front door and he did not find a ramp or any other way into the tile store.

When Ambrosio returned to his van, he could not get in because a car had parked too close to the van and the wheelchair aisle was too small to provide him access. He had to wait 20 to 30 minutes before he was able to leave.

Ambrosio testified he wrote a letter to the tile store and mailed it. He never received a response. (Shane Carlos Sanchez-Albuja, the operator and a part owner of the tile store, testified that he had received no such letter.)

Ambrosio testified he returned to the tile store once in either February or March 2012, and again one time in July 2012. He stated he found the "same conditions."

In April 2013, Ambrosio asked his friend and neighbor, Terry Lee Harrison, to go to the tile store with him, for the purpose of buying tile for the same landscaping job that he had been working on since early 2012. Ambrosio told Harrison that he could not get into the tile store to purchase the tile himself. When they arrived at the tile store, Ambrosio made no attempt to park near the ramp on the side of the tile store and did not get out of the van.

Harrison saw the ramp, but testified he thought Ambrosio would not be able to use it because it had "a dip at the bottom," and a gate at the top. Harrison testified he thought it was at such an incline, that if Ambrosio was by himself, he would not be able to negotiate it because there was no platform for the wheelchair to sit on. Harrison had no means of measuring the angle of the ramp and only viewed it from the bottom. He said he had attempted to walk up the ramp, but was unable to do so because he had

3

previously had kneecap replacement surgery. Harrison entered the tile store and purchased the tile.

Ambrosio's expert witness, William Carter, testified that in his opinion, the van-accessible stall and aisle at the tile store were too narrow. He also testified the ramp leading to an entrance of the tile store was gated and too steep, and thus did not comply with access laws. Carter stated he took measurements of the ramp but might have thrown away his notes; he had no notes of his inspection. He prepared a written report regarding the tile store, but did not mention the ramp. Carter explained the omission by stating he had been directed to only "check out the parking."

Sanchez-Albuja testified that the tile store had been successfully accessed by patrons using wheelchairs by way of the ramp, without any complaint. He testified the gate at the top of the ramp swung in both directions and was usually left open during business hours.

PROCEDURAL HISTORY

In July 2012, Ambrosio filed a complaint for damages and declaratory relief against Italgres Italian Ceramic Tile, Inc., and Goton Tiles, Inc., as the alleged operators of the tile store, and Seaward Re, L.P., as the alleged owner and landlord of the tile store. The complaint contained claims for (1) violation of section 51, subdivision (b); (2) violation of section 51, subdivision (f); and (3) declaratory relief under section 51.

In his complaint, Ambrosio alleged the tile store was a place of public accommodation in Orange County, within the meaning of 42 United States Code section 12181(7) and Health and Safety Code section 19955. Ambrosio stated he has a disability within the meaning of section 51, subdivision (e)(1) and 42 United States Code section 12102, and a physical disability within the meaning of Government Code section 12926. He alleged he is "confined to a wheelchair for mobility purposes and suffers from a physiological condition that adversely affects Plaintiff's musculoskeletal

4

system and limits Plaintiff's major life activities, including walking, socializing, and working."

Ambrosio further alleged: "Within two years prior to the date of filing this complaint, Plaintiff patronized or attempted to patronize the business upon the subject property with the intent to be a customer on at least three separate occasions. At the time of each visit, Plaintiff personally encountered construction-related access barriers which prevented Plaintiff's full and equal access to the business upon the subject property. Specifically, the premises violated the construction-related accessibility standards of Title 24 of the California *Code of Regulations* and of 28 C.F.R. Part 36—ADA Accessibility Guidelines ('ADAAG')." Ambrosio listed a number of alleged violations that included problems with site entrance and van-accessible signage; space, length, width, and number of van-accessible parking stalls and access aisles; and access aisle ground design. Ambrosio stated: "At the time of each of the three or more visits by Plaintiff to the subject property, one or more of the violations alleged in Paragraph 8 herein denied the Plaintiff full and equal access to the business upon the subject property by deterring the Plaintiff from accessing the business upon the subject property or by causing Plaintiff difficulty, discomfort, or embarrassment because of these violation(s) that Plaintiff personally encountered."

Ambrosio also alleged: "Based upon the facts alleged herein, Plaintiff has been discriminated against on the basis of Plaintiff's physical disability and will continue to be discriminated against unless and until Defendant is enjoined and forced to cease and desist from discriminating against Plaintiff and others similarly situated."

At some point after the complaint was filed, Goton Tiles, Inc., was dismissed from the case.

A bench trial was held on September 26 and 27, 2013. No party requested a statement of decision, and none was issued by the trial court. The trial court, however, issued a "Verdict" that contained many of the court's credibility findings. In its verdict,

5

the court referenced a list of controverted issues, but did not list them. Our record does not include a list of controverted issues.

In its verdict, the trial court stated it found that the tile store is a business of public accommodation. The court, however, did not believe Ambrosio was a credible witness. The court found Carter's testimony was of little value in that Carter "made limited inspection, gave a limited report, and even while testifying was of little help in assisting the Court in making its determination." The court stated it "discounted Mr. Carter's testimony," concluding his "testimony regarding wheelchair not a safe passage of travel because of the rain gutter or that the slope on the ramp was in excess of some determination, and that the rear ramp was not a public entrance, and there were forklifts moving around, did little to help the Court in determining the issues at stake. Although Mr. Carter stated that he walked up the ramp and concluded it was too steep, there was no note to that effect in his possession or in his report."

The court observed that Sanchez-Albuja testified, without contradiction, that when the business is open from 9:00 a.m. to 5:00 p.m., Monday through Saturday, the rollup doors are always open, the gate at the top of the ramp is unlocked and open, and the gate swings in both directions. Sanchez-Albuja testified that a forklift only occasionally moved products up the ramp. He further testified that "prior wheelchair clients have been to the property before and without complaints."

In its verdict, the court found that Ambrosio visited the tile store, but he did not do so with the intent to be a patron and did not encounter any barriers to the tile store because he never actually attempted to go into the business; instead, he merely observed the conditions of the tile store.[1] The court also found Ambrosio did not suffer any

---

[1] In view of Ambrosio's counsel's oral argument on appeal, we emphasize we do not reweigh the evidence and are bound by the trial court's evaluation of witness credibility. The trial court did not believe Ambrosio and found he did not satisfy the requirements of section 55.56. Specifically, the court concluded Ambrosio neither "personally encountered" a violation nor was "deterred" from accessing a place of public

6

damages and was not otherwise entitled to recover anything in this action. The court stated it found for defendants and against Ambrosio and that "[e]ach side [was] to bear their own costs and fees."

On October 28, 2013, Ambrosio filed a motion for reconsideration and/or relief from the trial court's verdict. The motion purported to be based "upon new and/or different facts, circumstances, and/or law, not previously considered by the Court at Trial." It stated: "This Motion will be based upon the grounds that Defendants provided perjured evidence that the gate on the loading ramp at the Subject Property swung both ways, and that the Court rendered its Verdict based upon this false evidence, and on the definition of 'patron' as it applies to this civil-rights, disability-access Action."

On November 18, 2013, judgment was entered in favor of defendants and against Ambrosio.[2] The judgment stated the parties were to bear their own attorney fees and costs.

On December 10, 2013, the trial court denied Ambrosio's motion for reconsideration.

DISCUSSION

I.

AMBROSIO HAS FAILED TO SHOW THE TRIAL COURT ERRED IN MAKING ANY FINDINGS OF FACT OR DECIDING ANY ISSUES OF LAW.

On appeal, Ambrosio contends the trial court erred by finding defendants not liable for damages for construction-related access violations, under sections 51 and 52. In light of new construction at the tile store, including a new access ramp, Ambrosio

accommodation. (§ 55.56, subd. (b).) Whether the specific ramp criticized by Ambrosio's counsel was or was not accessible to someone who actually encountered it or was actually deterred by it is not an issue before us.

[2] Ambrosio did not designate the judgment or the trial court's minute order denying his motion for reconsideration. Pursuant to our April 23, 2015 order, we augment the record with those two documents pursuant to rule 8.155(a)(1)(A) of the California Rules of Court.

7

has jettisoned any request for injunctive or declaratory relief. For the reasons we explain, the trial court did not err.

A.

*Standard of Review*

"Without a statement of decision, and timely objections to any ambiguities or omissions in it, the doctrine of implied findings applies." (*County of Orange v. Barratt American, Inc.* (2007) 150 Cal.App.4th 420, 438.) "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error. [Citations.]" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)

"We review the trial court's express factual findings, and any implied findings, for substantial evidence. [Citations.] [¶] We review legal issues, such as statutory interpretation, under a de novo or independent standard. [Citations.] 'In theory, a determination is one of ultimate fact if it can be reached by logical reasoning from the evidence, but one of law if it can be reached only by the application of legal principles.' [Citation.]" (*Apex LLC v. Sharing World, Inc.* (2012) 206 Cal.App.4th 999, 1009.)

B.

*The Unruh Civil Rights Act*

The California Supreme Court explained in *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 667-668: "[S]ections 51 and 52 were originally enacted in 1905 (based on predecessor statutes) and were substantially revised in 1959, when the name 'Unruh Civil Rights Act' was added. [Citations.] While section 51's statement of the substantive scope of protections afforded and section 52's statement of the remedies

8

available have both changed over the course of time, section 51 has always provided substantive protection against invidious discrimination in public accommodations, without specifying remedies, and section 52 has always provided remedies, including a private action for damages, for violations of section 51. In *Harris*[ *v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142], therefore, we considered the two sections as interrelated parts of the same statutory scheme (we referred to them together as 'the Unruh Act'), with section 52 serving 'to provide an enforcement mechanism for section 51 and other provisions of law.' (*Harris*, at p. 1153; see *id.* at pp. 1148, 1151; accord, *Angelucci v. Century Supper Club* [(2007)] 41 Cal.4th [160,] 166 [stating, with reference to § 52, 'The [Unruh Civil Rights] Act includes an enforcement provision that authorizes individual actions.'].)" (Fns. omitted.)

Here, Ambrosio argues defendants violated subdivision (b) of section 51, which provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." He also argues defendants violated subdivision (f) of section 51, which provides: "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section." The California Supreme Court has held that a plaintiff who establishes a violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), and thus a violation of section 51, subdivision (f) does not need to prove intentional discrimination in order to obtain damages under section 52. (*Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at p. 665.)

Section 52, subdivision (a) provides: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . , is liable for each and every offense for the actual damages, and any amount that may be determined

9

by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51 . . . ."

C.

*Because Ambrosio's Claims Were Exclusively Based on Violations of Construction-related Accessibility Standards, He Had to Prove the Requirements of Section 55.56 Before Recovering Damages Under Section 52.*

"Section 55.56 is part of a comprehensive statutory scheme that was enacted in 2008 with the intent of increasing voluntary compliance with equal access standards 'while protecting businesses from abusive access litigation.' (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 677 . . . ; see §§ 55.3-55.57.) The provisions in sections 55.51 through 55.57 apply only to a 'construction-related accessibility claim' (§ 55.51), which is defined as a violation of a 'construction-related accessibility standard' under federal or state law (§ 55.52, subd. (a)(1), (6))." (*Mundy v. Pro-Thro Enterprises* (2011) 192 Cal.App.4th Supp. 1, 5.)

Section 55.56 provides in relevant part: "(a) Statutory damages under either subdivision (a) of Section 52 or subdivision (a) of Section 54.3 may be recovered in a construction-related accessibility claim against a place of public accommodation *only if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion.* [¶] (b) A plaintiff is denied full and equal access *only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion.* [¶] (c) A violation personally encountered by a plaintiff may be sufficient to cause a denial of full and equal access if the plaintiff experienced difficulty, discomfort, or embarrassment because of the violation. [¶] (d) A plaintiff demonstrates that he or she

10

was deterred from accessing a place of public accommodation on a particular occasion only if both of the following apply:  [¶] (1) The plaintiff had actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion.  [¶] (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion."  (Italics added.)[3]

D.

*Substantial Evidence Shows Ambrosio Failed to Prove He Either Personally Encountered a Violation of Construction-related Accessibility Standards or Was Deterred from Accessing a Place of Public Accommodation on a Particular Occasion.*

Ambrosio's appellate arguments strongly suggest a misunderstanding of the burden of proof at trial.  It was Ambrosio's burden at trial to prove he was denied full and equal access to the tile store, under section 55.56, subdivisions (a) and (b), because he either (1) personally encountered a violation of construction-related accessibility standards at the tile store or (2) was deterred from accessing a place of public accommodation on a particular occasion.

We review the trial court's implied factual findings for substantial evidence and we do not second-guess the trial court's credibility determinations.  Here, substantial evidence supported the court's finding that Ambrosio failed to prove denial of full and equal access based on either theory.

---

[3] Section 55.56, subdivision (e) provides:  "Statutory damages may be assessed pursuant to subdivision (a) based on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred. If the place of public accommodation consists of distinct facilities that offer distinct services, statutory damages may be assessed based on each denial of full and equal access to the distinct facility, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred."

11

### 1.

#### Substantial Evidence Supported the Trial Court's Finding
#### Ambrosio Did Not Personally Encounter a Violation.

Ambrosio failed to establish the existence of a construction-related accessibility standard violation, much less that he personally encountered any violation. Sanchez-Albuja testified that the ramp had been successfully utilized by patrons using wheelchairs without complaint. He testified that during business hours, the ramp is available, and the gate at the top of the ramp (which swings in both directions) is unlocked and open.

Ambrosio failed to present any evidence of the ramp's dimensions or other attributes that proved a violation of any particular construction standards. Instead, Ambrosio's skeletal presentation of trial evidence largely consisted of personal opinion and conclusion. Ambrosio's retained expert witness, Carter, testified he did not keep any notes describing the measurements he had taken and did not include them or his conclusions about the ramp in his report.

In his opening brief, Ambrosio argues: "Anyone who has even skimmed the surface of disabled-access law, or ever reviewed the rules related to access ramps in the American With Disabilities Act Access Guidelines . . . , knows, and/or would quickly and easily conclude that a loading ramp is not a suitable or legal wheelchair-access ramp, *especially* one, as is admitted here, used *daily* by forklifts while the business is open, and located *nowhere near* any disabled parking." (Boldface omitted.) Ambrosio's characterization of the ramp as a "loading" ramp is not evidence that it violates any construction-related accessibility standards. (Boldface omitted.) Ambrosio does not cite any legal authority, and we have found none, that renders an otherwise compliant ramp as not compliant because it might be used occasionally by forklifts.

Ambrosio offered photographs of the ramp, which he claimed he took in April 2013, while he waited in the van for Harrison to purchase tile inside the tile store.

12

The trial court, however, did not believe Ambrosio's testimony that the photographs were taken during business hours, observing that the photographs showed the rollup door at the top of the ramp was closed (it is required to be open during business hours); no cars appeared in the pictures; and the tree in the picture casted a long shadow, thereby strongly suggesting the pictures were taken early or late in the day. Consequently, we do not know and do not need to decide whether the ramp at issue in this litigation violated any construction-related accessibility standard.

Even if Ambrosio had proven that the ramp violated construction-related accessibility standards, he failed to prove he personally encountered that violation, causing him to experience "difficulty, discomfort, or embarrassment because of the violation." (§ 55.56, subd. (c).) Ambrosio testified that the first time he visited the tile store, and got out of his van, he did not see a ramp, much less attempt to use it. He testified that he visited the tile store on three more occasions but did not testify that he got out of his van to attempt to inspect or utilize the ramp.

As to Ambrosio's claims of violations of construction-related accessibility standards with regard to the provision of van-accessible parking, even if we were to assume he proved a violation, the trial court expressly found Ambrosio did not encounter any barriers as he never attempted to enter the tile store, but, instead, merely observed its outside conditions. In other words, the trial court did not believe Ambrosio's testimony that in January 2012, he exited his van and when he returned, he could not reenter the van because a car had parked nearby and the van-accessible aisle was too narrow.

2.

Substantial Evidence Showed Ambrosio Was Not Deterred
from Accessing the Tile Store.

Section 55.56, subdivision (d) provides: "A plaintiff demonstrates that he or she was deterred from accessing a place of public accommodation on a particular occasion only if both of the following apply: [¶] (1) The plaintiff had actual knowledge

13

of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion. [¶] (2) The violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion."

Substantial evidence supported the trial court's finding Ambrosio failed to prove that on any of the four alleged visits to the tile store, Ambrosio intended to "use" it within the meaning of section 55.56, subdivision (d)(1), or that any alleged violation would have actually denied him full and equal access.

The trial court found Ambrosio to be generally not credible.[4] The trial court was within its discretion to disbelieve Ambrosio's testimony that he intended to purchase tile at the tile store for a landscaping project for someone named "Ruby," which he said required tile pieces as early as 2012, and still required tile pieces in April 2013. Ambrosio did not testify that he ever called the tile store to determine how to purchase the tile if he were unable to access it or to otherwise request accommodation. (He testified he sent a letter to the tile store; Sancho-Albuja testified the letter was never received.) Ambrosio suggests in his appellate briefs that the trial court was required to take his word for it. Not so. As discussed *ante*, the requirements of section 55.56 were put in place, in part, to protect businesses from abusive access litigation. (See *Munson v. Del Taco, Inc.*, *supra*, 46 Cal.4th at p. 677; see also §§ 55.3-55.57.) Ambrosio was therefore required to prove this element and failed to so persuade the trier of fact.

Furthermore, even assuming the ramp was in violation of construction-related accessibility standards, Ambrosio failed to show that any such

---

[4] Ambrosio states that the trial court might have improperly questioned his credibility because Ambrosio has filed many lawsuits regarding access issues, in "serial fashion." Our record shows the trial court found Ambrosio not credible based on his testimony at trial in this case.

14

violation would have *actually* denied him full and equal access within the meaning of section 55.56, subdivision (d)(2), if he had accessed the tile store. As discussed *ante*, Sanchez-Albuja testified that customers using wheelchairs have successfully accessed the tile store via the ramp, without complaint.

## II.

### THE TRIAL COURT PROPERLY DENIED THE MOTION FOR RECONSIDERATION.

"An order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." (Code Civ. Proc., § 1008, subd. (g).)

We review the order denying Ambrosio's motion for reconsideration for abuse of discretion. (*County of Los Angeles v. James* (2007) 152 Cal.App.4th 253, 256.) The legal issues underlying the denial of the motion for reconsideration, however, are subject to de novo review. (*Shisler v. Sanfer Sports Cars, Inc.* (2008) 167 Cal.App.4th 1, 6.)

Ambrosio's motion for reconsideration was based on the ground that defendants provided perjured evidence that the gate on the loading ramp at the tile store swung both ways and also was based "on the definition of 'patron' as it applies to this civil-rights, disability-access Action."

In its minute order denying the motion for reconsideration, the trial court stated it would, in its discretion, treat the motion as a motion for a new trial because judgment had been entered. As to "The Rear Gate Issue" (underscoring omitted), the trial court stated Ambrosio's evidence defendants offered perjured gate evidence was based on Carter's posttrial visit to the tile store, during which he observed that a new gate had been installed and it swung in both directions, unlike the old gate. The court disagreed that Ambrosio's evidence established perjury, explaining: "The conditions of the new gate really does not matter. The mere fact that there is a new gate does not mean that the

15

testimony that the Court heard about the prior gate was 'false' and 'perjured'. [¶] It appears that the Court received ample evidence on this issue at trial—including testimony from the Defendant business owner, Mr. Sanchez-Al[bu]ja that existing gate moved in both directions, and the photograph of that gate angled in one direction. Plaintiff concedes his own expert, Mr. Carter also testified to the Court about the old gate—and stated that it only swung one way, which the Court did not find credible. [¶] Plaintiff has not substantiated the claim of 'perjury' and the replacement of the gate after trial, does not seem to be grounds for changing the Court's ruling."

In his appellate briefs, Ambrosio reiterates the same arguments addressed and rejected by the trial court in its minute order. Ambrosio did not present credible evidence at trial, establishing that the gate at the top of the ramp did not swing both ways. Sanchez-Albuja testified that it did. Ambrosio's posttrial evidence that the gate had been replaced does not prove the previous gate did not swing in both directions.

As to Ambrosio's second argument that the court should reconsider the issue of his intent to be a patron and encountering barriers, the trial court stated: "First, Plaintiff does not demonstrate why the cases and arguments that are presented in his motion were not presented to the Court earlier. [¶] The party moving for reconsideration of an issue on the grounds of new or different law, must make the same showing of diligence, as with other grounds for the motion. [¶] Plaintiff could have submitted a brief to the Court earlier. In the list of controverted issues that was submitted to the Court before trial, he listed this very issue: [¶] 'Whether Plaintiff ever visited Italgres with the intent to be a patron.' [¶] 'Whether Plaintiff ever encountered any barrier(s) to access at Italgres[.]' [¶] Plaintiff argues he only needed to show that he was deterred from patronizing the business, not that he attempted to physically enter . . . . [¶] . . . [¶] It would appear . . . that intent to patronize the business is still a requirement for the plaintiff to have standing. Following the trial, this Court did not find that such an intent was present in this case. [¶] Finally, in an effort to buttress his intent, Plaintiff submits a

16

declaration stating that he visited the facility to purchase tile for a friend for a landscape consulting project and that is his side business. [¶] There is nothing in the declaration that he could not have presented to the Court before."

As discussed in detail *ante*, section 55.56 itself establishes that Ambrosio could not recover section 52 damages unless he proved he was denied full and equal access because he either personally encountered a violation on a particular occasion or was deterred from access to the tile store. Ambrosio's argument that he only needed to prove he was deterred from entering a business, regardless whether he intended to patronize it, is without merit. Section 55.56, subdivision (d)(1) expressly requires that in order to prove a deterrence theory, Ambrosio had to prove, inter alia, his actual knowledge of a violation that prevented or reasonably dissuaded him from accessing the tile store "that [he] intended to use on a particular occasion." For all the reasons discussed *ante*, Ambrosio failed to satisfy that prong.

The trial court did not err by denying the motion for reconsideration.


DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.



FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.


17